IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

KORY KEON SOLOMON,

Defendant.

CRIMINAL ACTION FILE

NO. 1:23-CR-125-MHC-RGV-15

## ORDER

Defendant Kory Keon Solomon ("Solomon") has been charged in a multi-count superseding indictment with other co-Defendants on one count of conspiring to possess with the intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 846 (Count One); one count of possession with the intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Seven); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Eight). First Superseding Criminal Indictment [Doc. 528]. This action comes before the Court on the Final Report and Recommendation ("R&R") of United States Magistrate Judge Russell G. Vineyard [Doc. 739] recommending the denial of Solomon's Motion to Suppress Fruits of Unlawful Stop and Search of the Gold Toyota Camry That the Defendant Was Driving on February 24, 2022 [Doc.

590], Solomon's Motion to Suppress the Search and the Seizure of Items From the Defendant's Vehicle That Were the Result of an Unconstitutional Traffic Stop [Doc. 591], and Solomon's Motion to Suppress the Search and the Seizure of Items From the Defendant's Vehicle Found After the Defendant's Alleged Consent Was Revoked [Doc. 592].

The Order for Service of the R&R [Doc. 740] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Solomon has filed his objections to the R&R ("Def.'s Objs.") [Doc. 749], to which the Government has filed a response [Doc. 758].

## I.    LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by

the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Moreover, "a party does not state a valid objection to an R&R by merely incorporating by reference previous filings." Hammonds v. Jackson, No. 13-CV-711-MHS, 2015 WL 12866453, at *6 n.2 (N.D. Ga. May 18, 2015); see also Morrison v. Parker, 90 F. Supp. 2d 876, 878 (W.D. Mich. 2000) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review.") (citations omitted).

Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Ortiz objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II.    FACTUAL BACKGROUND

### A.    Circumstances Prior to Law Enforcement Contact with Solomon

After receiving information that a drug trafficking organization known as the
Paper Gang Family ("PGF") was distributing kilogram quantities of
methamphetamine, cocaine, and marijuana in the metro Atlanta area, the Drug
Enforcement Administration ("DEA") began an investigation in June 2019.  Tr. of
Aug. 14, 2024, Evidentiary Hr'g ("Tr.") [Doc. 676] at 5-6.[1]  One of the targets of
the PGF investigation, Broderick Williams ("Williams"), previously had been
investigated by DEA agents in Macon, Georgia, including DEA Special Agent
Michael Stanton ("Agent Stanton"), who was the case agent for the Macon
investigation.  Id. at 6-7.  The case agent for the Atlanta investigation of the PGF,
DEA Special Agent Brian Tice ("Agent Tice"), was in continual contact with
Stanton and in fact utilized information provided by Agent Stanton to obtain a
wiretap for a telephone utilized by Williams.  Id. at 7-8.  Agent Stanton relayed to

---

[1] The citations to the transcript are to the transcript page numbers located at the
upper right corner of each page as opposed to the numbers on the docket.

Agent Tice that Solomon was a person of interest in the Macon investigation due to alleged drug transactions between Solomon and Williams.[2] Id. at 9-10.

In February 2022, DEA agents installed a pole camera that could observe and record the street and driveway areas adjacent to the residences located at 2555 and 2558 Stanford Drive in Ellenwood, Georgia, which were in an area that members of the PGF referred to as "The Neighborhood." Id. at 10. On February 24, 2024, while Agent Tice was monitoring the pole camera,[3] a gold Toyota Camry driven by Solomon arrived at the front of 2555 Stanford Drive, when a white Toyota Camry that agents previously observed was driven by Williams pulled up in front of the gold Camry. Id. at 13, 15-18, 40, 42. Williams later was observed exiting the gold Camry and entering the white Camry with "something concealed in the front pocket of his hoodie [believed] to be bulk currency." Id. at 19-20, 42. A short time later, Solomon drove away from the area but eventually returned, where Williams's vehicle remained. Id. at 20-21, 42. Williams got out of his

_____

[2] Agent Tice testified that there was no indication that Solomon was a member of the PGF. Tr. 39.

[3] Agent Tice was not watching all of the time that images were recorded on the pole camera but was able to identify what was contained on the recording. Id. at 15. Portions of the video recording was admitted into evidence as Government Exhibits 2 and 3. Id. at 12-14.

vehicle to talk to others who are co-Defendants in this case, and Solomon remained in his vehicle. Id. at 27. Williams got back into the passenger seat of the white Camry and both Williams and Solomon left the area. Id. at 27-28.

Williams and Solomon once again later returned to the Stanford Drive area. Id. at 28, 30. Williams then exited the white Camry carrying a multi-colored backpack which appeared to have a substance in it and got into the front passenger seat of Solomon's gold Camry. Id. at 30-32. About one minute later, Williams got out of Solomon's vehicle with the backpack, which appeared thinner than when Williams entered the vehicle, and Williams then returned the backpack to the rear passenger seat of the white Camry. Id. Solomon then drove away in the gold Camry and was followed by agents. Id. at 32-33.

Solomon headed back toward Interstate 75 but stopped at a Chevron gas station, where he was observed by agents moving a bag from the trunk, placing it in the passenger seat when he appeared to be putting something in the bag, and then returning the bag to the trunk. Id. at 33-34. Solomon then was observed entering I-75 and traveling south, and the DEA agents, including Agent Stanton (who was assisting with the Atlanta investigation) arranged for local law enforcement officers to conduct a traffic stop on Solomon's vehicle. Id. at 25, 35, 56-57.

**B.    The Traffic Stop and Subsequent Arrest**

Agent Stanton contacted Deputy Anthony Thompson ("Deputy Thompson") of the Monroe County Sheriff's Office by phone and text communication, advised Deputy Thompson of Solomon's location, mentioned that Solomon was likely to have narcotics in a green bag on the trunk of the vehicle, and indicated that Deputy Thompson should conduct a traffic stop but should obtain "independent probable cause to stop" Solomon's gold Camry. Id. at 52, 57-58, 60-61. Deputy Thompson eventually saw the gold Camry cross over the solid yellow line on the outside of the roadway several times, which was a violation of the Georgia Motor Vehicle Code, which led to Deputy Thompson stopping the vehicle. Id. at 64-65, 104. Deputy Thompson activated his patrol car's lights and sirens, and Solomon proceeded to the right shoulder of the highway and stopped. Id. at 65-66. Deputy Thompson activated his bodycam which recorded the stop. Id. at 66-68.

Deputy Thompson approached Solomon's vehicle on the passenger side and "saw blunt spray,[4] several cell phones in the passenger seat, a cell phone located in [Solomon's] lap next to his right hand, and I could smell an odor of burnt marijuana coming from inside the vehicle." Id. at 71-73. Deputy Thompson asked

---

[4] Deputy Thompson testified that "blunt spray" is a "masking or cover agent" designed to mask the odor of marijuana. Id. at 72.

for Solomon's vehicle registration. Id. at 73. After Solomon produced both his driver's license and vehicle registration, Deputy Thompson asked Solomon to exit the vehicle and was granted consent to conduct a pat down search of Solomon's person. Id. at 75-76. Deputy Thompson asked Solomon a number of questions as to whether he had been drinking and what his travel plans were, the answers to the latter of which appeared to be inconsistent. Id. at 73, 76-77, 80, 82. Deputy Thompson then had Solomon sit in the front seat of Deputy Thompson's police car in preparation to write Solomon a warning for failure to maintain a lane. Id. at 77-78, 81.

Deputy Thompson asked Solomon whether there he had been in possession of the vehicle for the past 48 hours, which Solomon confirmed, and then asked Solomon whether there was anything illegal in the vehicle, including narcotics, which Solomon denied. Id. at 83. Deputy Thompson then asked Solomon for consent to search the gold Camry, and Solomon granted consent to search. Id. at 83-84. Sergeant Luther Kevin Williams ("Sergeant Williams") of the Monroe County Sheriff's Office arrived on the scene and stood with Solomon while Deputy Thompson conducted the vehicle search. Id. at 57, 63, 86, 110, 118-19, 121). Deputy Thompson discovered an extended magazine for a handgun in a black bag in the front passenger seat and located the handgun between the driver's

seat and the center console. Id. at 87-88. Deputy Thompson then searched the

trunk of the vehicle and found a lime green bag that Agent Stanton had earlier

referenced. Id. at 89-91. Deputy Thompson then asked Solomon if the contents of

the trunk belonged to him and Solomon said they were his mother's. Id. at 91.

Solomon then said he was going to call his lawyer, and Deputy Thompson

told Solomon to stay off the phone to ensure that Solomon would not be calling

another co-conspirator or otherwise jeopardize the officer's safety; moreover, after

several attempts to get Solomon to stop using the phone, Deputy Thompson

removed the phone from Solomon's hands and placed on the front seat of the gold

Camry. Id. at 90-92. Deputy Thompson then searched the green bag and found

two bricks of cocaine, after which time Deputy Thompson arrested Solomon,

placed him in hand restraints, and read Solomon his Miranda rights. Id. at 92-93.

## III.    DISCUSSION

### A.    The Report and Recommendation[5]

In his arguments before the Magistrate Judge, Solomon contended that

Deputy Thompson did not have probable cause to conduct the traffic stop because

---

[5] Although Solomon filed three separate motions to suppress that challenged various aspects of Thompson's traffic stop and search of Solomon's vehicle, the Magistrate Judge addressed these arguments together in the R&R.  R&R at 9 n.4.

Solomon was operating the gold Cary lawfully. The Magistrate Judge disagreed, finding that Deputy Thompson credibly testified that he had probable cause to believe that Solomon violated O.C.G.A. § 40-6-48 by failing to maintain his lane while traveling southbound on I-75. R&R at 13-15. The Magistrate Judge also found that Deputy Thompson had reasonable suspicion to stop the gold Camry based on the collective knowledge of the law enforcement officers who were investigating the PGF and the prior knowledge of Solomon's and Williams's relationship and the likelihood that the gold Camry contained evidence of drug trafficking. Id. at 16-20. Solomon also contended that Deputy Thompson unreasonably prolonged the traffic stop justifying the suppression of the evidence collected, but the Magistrate Judge found that the duration of the stop until Solomon was arrested was reasonable (less than thirty minutes) and Deputy Thompson extended the stop in order to confirm or dispel the reasonable suspicion that Solomon was transporting narcotics or drug proceeds. Id. at 20, 26-29.

With respect to the search of the vehicle, Solomon argued that there was no probable cause for such search, but the Magistrate Judge concluded that the search was support by probable cause to believe it contained contraband under the automobile exception to the warrant requirement. Id. at 29-31. Finally, Solomon contended that his consent to search the vehicle was not voluntary and that, even if

it was voluntary, it was withdrawn by his request to call his lawyer. Id. at 32, 34-35. The Magistrate Judge found that Solomon voluntarily consented to the search, did not revoke that consent, and, even if consent was revoked, Deputy Thompson was entitled to continue the search based upon probable cause that marijuana was present in the vehicle. Id. at 33-37.

### B.    Solomon's Objections

#### 1.    Attempt to Incorporate Prior Arguments from Briefing Before the Magistrate Judge

As an initial matter, throughout his objections, Solomon attempts to incorporate by reference arguments made in his post-evidentiary hearing brief in support of his motion to suppress that already has been considered by the Magistrate Judge. See Def.'s Objs. at 3 (restating Solomon's "conten[tions] in is initial brief (Doc: 702)," 5 (alleging error "based on . . . defendant's initial brief (Doc: 702)," 6 (arguing a lack of probable cause "for the reasons . . . in . . . its initial brief (Doc: 702)." These are invalid objections. See United States v. Dulaney, No. 1:23-CR-0066-MHC-CCB-2, 2024 WL 3913495, at *2 (N.D. Ga. Aug. 23, 2024) (citing cases which hold that a party who incorporates prior filings does not state valid objections to a report and recommendation). Accordingly, the Court will not review the prior arguments made by Solomon to the Magistrate Judge, but only will consider specific objections made to the R&R.

## 2.    Credibility of Deputy Thompson

In his first objection, Solomon contends that Deputy Thompson's testimony as to the traffic stop "was not credible and the defendant objects to the R&R stating otherwise." Def.'s Objs. at 4. A district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings. United States v. Raddatz, 447 U.S. 667, 680-81 (1980); United States v. Thompson, 422 F.3d 1285, 1297 (11th Cir. 2008). "[I]n evaluating the factual version of events between the law enforcement officer[ ] and [the defendant], we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'" United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)). See also United States v. Emanuel, 440 F. App'x 881, 883 (11th Cir. 2011) (according "substantial deference" to the credibility determinations made by the magistrate judge where the defendant "failed to show that the magistrate [judge]'s understanding of the facts is not plausible or permissible . . . .").

This is not one of those "rare cases" in which the transcript of the evidentiary hearing presents a basis for rejecting the Magistrate Judge's resolution

of credibility.  United States v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980);[6] see

also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("This is not

the 'rare case' discussed in Marshall, as the transcript here provides no basis to

reject the magistrate judge's credibility findings.").  Moreover, Deputy

Thompson's testimony as to the traffic stop was consistent with his own bodycam

footage.  Solomon presents no articulable basis for rejecting the determination of

the Magistrate Judge that Deputy Thompson's testimony was credible, and his

objection is **OVERRULED**.

### 3.    Probable Cause to Conduct Traffic Stop

In his second objection, Solomon asserts that the R&R erred by stating "that

the defendant was driving his vehicle in violation of the law."  Def.'s Objs. at 4-5.

Solomon in fact misstates the Magistrate Court's finding, which was not that

Solomon actually violated the cited traffic law, but that Deputy Thompson had

probable cause to believe that Solomon violated the traffic law.

> Solomon's argument that he "was not violating any traffic laws when
> Deputy Thompson stopped him," [Doc. 590 at 2], is "'unpersuasive, as
> it appears to confuse the standards for probable cause with those for a
> violation,'" United States v. Reyes, Criminal Case Nos. 1:11-cr-00009-
> ODE-RGV, 1:11-cr-00060-ODE-RGV, 2011 WL 7070908, at *6 (N.D.

---

[6] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed
down prior to the close of business on September 30, 1981.

Ga. Aug. 29, 2011). Specifically, "the propriety of the traffic stop does not depend on whether the defendant is actually guilty of committing a traffic offense," but instead, "the pertinent question is whether it was reasonable for the officer to believe that a traffic offense had been committed." United States v. Crump, Criminal Action File No. 4:10–CR–032–HLM–WEJ, 2011 WL 6153106, at *5 (N.D. Ga. Nov. 21, 2011) (citation omitted), adopted by 2011 WL 6179211, at *8 (N.D. Ga. Dec. 12, 2011). Deputy Thompson credibly testified that he believed a traffic offense had been committed, since he observed Solomon's vehicle fail to maintain its lane on more than one occasion by crossing over the fog line.

R&R at 14-15 (citations omitted).

A traffic stop constitutes a "seizure" for purposes of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "[L]aw enforcement 'may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitudes of applicable traffic and equipment regulations relating to the operation of motor vehicles.'" United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990)). In the instant case, O.C.G.A. § 40-6-48 furnishes the relevant statutory basis.

Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

O.C.G.A. § 40-6-48(1).

14

Deputy Thompson testified that he observed Solomon's vehicle go past Deputy Thompson's location and "cross over the solid yellow line located on the outside of the roadway, also the fog line" and "after observing [Solomon] cross over [the line] the first time, I began merging out into traffic to catch up to Mr. Solomon," and Thompson then saw Solomon cross[ ] over that solid line several more times." Tr. at 64-65.  Numerous Georgia cases have held such conduct to be violative of O.C.G.A. § 40-6-48(1).  See Acree v. State, 319 Ga. App. 854, 855 (2013) (officer had reasonable suspicion to initiate a traffic stop under O.C.G.A. § 40-6-48(1) where the defendant's tires crossed the white fog lines on the side of the road); Polk v. State, 305 Ga. App. 677, 679 (2010) ("Here, Polk violated O.C.G.A. § 40-6-48(1) based on evidence that he twice crossed over the centerline on Post Road and 'broke the [plane] of the outermost edge of the center line.'"); Rayo-Leon v. State, 281 Ga. App. 74, 75 (2006) (holding that weaving into nearby lanes violates O.C.G.A. § 40-6-48(1) and justifies a traffic stop) (citing cases)). The Magistrate Judge did not err in concluding that Deputy Thompson had probable cause to believe that Solomon violated O.C.G.A. § 40-6-48(1) which supported the traffic stop, and Solomon's objection is **OVERRULED**.

### 4.    Reasonable Suspicion to Conduct Traffic Stop

Solomon also objects to the alternative finding in the R&R that there was
also reasonable suspicion to support the traffic stop based upon the collective
knowledge of all the officers that Solomon's vehicle was involved in an illegal
narcotics transaction. Def.'s Objs. at 5. However, Solomon does not provide and
specific reasons for such an objection other than referring to his post-hearing brief
and a general cite to Terry v. Ohio, 392 U.S.1 (1968). Id.

The Fourth Amendment provides that "[t]he right of people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated, and no Warrants shall issue, but upon probable
cause, supported by Oath or affirmation, and particularly describing the place to be
searched, and the persons or things to be seized." U.S. CONST. amend. IV.
However, the police "may, consistent with the Fourth Amendment, conduct a brief,
investigatory stop when the officer has a reasonable, articulable suspicion that
criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also
Terry, 392 U.S. at 30-31; United States v. Jordan, 632 F.3d 1181, 1186 (11th Cir.
2011) (concluding that under the Fourth Amendment, law enforcement officers
may conduct a Terry stop when (1) the officers have reasonable suspicion the

suspect is involved in criminal activity and (2) the stop is "reasonably related in

scope to the circumstances which justified the interference in the first place.").

> Reasonable suspicion demands "considerably less" than probable cause, but "the police are required to articulate some minimal, objective justification for the stop." United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996). That justification may be based on the information available to the officer at the time. See [United States v.] Arvizu, [534 U.S. 266,] 273 [(2002)].

United States v. Webster, 314 F. App'x 226, 229 (11th Cir. 2008) (parallel

citations omitted).

To determine whether reasonable suspicion exists, the court "must look at

the 'totality of the circumstances' of each case to see whether the detaining officer

has a 'particularized and objective basis' for suspecting legal wrongdoing."

Arvisu, 534 U.S. at 273 (citation omitted). Examining the totality of the

circumstances "allows officers to draw on their own experience and specialized

training to make inferences from and deductions about the cumulative information

available to them that might well elude an untrained person." Id. (quotation and

citation omitted). The court should give due weight to an officer's experience and

expertise when evaluating reasonable suspicion. Ornelas v. United States, 517

U.S. 690, 699 (1996); see also United States v. Chanthasouxat, 342 F.3d 1271,

1276 (11th Cir. 2000) ("[g]reat deference is given to the judgment of trained law

enforcement officers on the scene.") (internal quotation marks and citation omitted).

After review of the totality of the circumstances in this case, the Court finds that Deputy Thompson had reasonable suspicion to believe that Solomon was involved in the distribution of illegal narcotics with Williams and could proceed with an investigative stop under Terry. The following facts within the collective knowledge of law enforcement which were communicated to Thompson supported the stop: (1) Solomon was identified as a person of interest in the investigation of Williams; (2) Agents observed Williams's and Solomon's vehicles in the area of residences which were suspected of being involved in narcotics distribution for the PGF; (3) Williams was seen exiting Solomon's vehicle with a backpack that was noticeably thicker than when it was first observed; and (4) Solomon was observed moving a bag suspected of carrying narcotics from the trunk of his vehicle to the passenger seat.

This Court agrees with the Magistrate Judge that:

> In this case, agents conducting surveillance observed what they reasonably believed to be a narcotics transaction involving the gold Camry based on their training, experience, and investigation of the PGF and prior knowledge of Solomon and Williams' relationship. . . . Accordingly, Deputy Thompson had probable cause to stop Solomon for the traffic violation, and the stop was also justified by reasonable suspicion that the vehicle contained evidence of drug trafficking.

R&R at 18-20 (citations omitted).  Solomon's objection is **OVERRULED**.

### 5.    Length of the Traffic Stop

Solomon objects to the Magistrate Judge's determination that the duration of the traffic stop was reasonable, arguing that "Thompson unlawfully extended it by continuing to question the defendant beyond what was necessary and reasonable to write a warning ticket." Def.'s Objs. at 6.

> Officers do not have "unfettered authority to detain a person indefinitely" even if they have reasonable suspicion. United States v. Campbell, 26 F.4th 860, 881 (11th Cir. 2022). "The detention is limited in scope and duration"; officers must conduct their investigation diligently, and cannot unlawfully prolong a stop. Id. (quotation marks omitted). "Unrelated inquiries are permitted so long as they do not add time to the stop." Id. at 882. "[A] stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." Id. at 884. "In other words, to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." Id. "If an officer prolongs a stop, any evidence uncovered as a result may be suppressed." Id. at 885.

United States v. Moore, No. 21-14210, 2023 WL 1434181, at *1 (11th Cir. Feb. 1, 2023), cert. denied, 144 S. Ct. 150 (2023).

In this case, as stated by the Magistrate Judge, Deputy Thompson validly prolonged the stop beyond the initial traffic offense "to confirm or dispel the reasonable suspicion that Solomon may be transporting narcotics or proceeds of drug trafficking in the vehicle." R&R at 26.  The total duration of the stop was less

than thirty minutes, after which Solomon consented to the search of the vehicle.

Id. at 27-29. Deputy Thompson was diligent is his questioning and the scope and

intrusiveness of the detention was not unreasonable and less intrusive than other,

more lengthy stops approved by the Eleventh Circuit. United States v. Acosta, 363

F.3d 1141, 1146-47 (11th Cir. 2004); see also United States v. Williams, 185 F.

App'x 866, 870 (11th Cir. 2006) (finding that police reasonably detained the

defendant, including handcuffing him and placing him in a patrol car, for

approximately one hour); United States v. Gil, 204 F.3d 1347, 1350 (11th Cir.

2000) (per curiam) (finding one hour and fifteen minute detention of the defendant

in handcuffs in back of a patrol car reasonable under Terry); United States v.

Hardy, 855 F.2d 753, 761 (11th Cir. 1988) (finding Terry stop of fifty minutes

duration reasonable). Solomon's objection is **OVERRULED**.

### 6.    Probable Cause to Search the Vehicle

Solomon objects to the Magistrate Judge's finding that there was probable

cause to search the vehicle but bases the objection on his port-hearing brief and the

Magistrate Judge's credibility determination, Def.'s Objs. at 6-7, which have

previously been rejected as grounds for objection in this Order. Solomon does not

present specific objections to the Magistrate Judge's finding that the warrantless

search of Solomon's vehicle was supported by probable cause under the

automobile exception to the warrant requirement. R&R at 30-31. Consequently, his objection is **OVERRULED**.

### 7. Consent to Search the Vehicle

Finally, Solomon objects to the Magistrate Judge's finding that Solomon consented to the search of his vehicle and, if he consented, that he failed to revoke such consent. Def.'s Objs. at 7-8. Solomon offers no specific ground to challenge the Magistrate Judge's finding that Solomon's consent to search was voluntary. R&R at 32-34. Solomon argues that he revoked his consent when "he indicated that he wanted the search to stop when he announced he wanted to call an attorney." Def.'s Objs. at 7.

However, both the credible testimony of Deputy Thompson and Sergeant Williams, along with Deputy Thompson's bodycam footage, reveal that Solomon never revoked his consent to search the vehicle. In reality, Solomon asked to call his lawyer after Deputy Thompson inquired whether everything in the trunk of the car was his, and never told the officers to stop searching the car. Moreover, the Magistrate Judge also determined that, regardless of whether Solomon revoked his consent to search the gold Camry, the search nevertheless was supported by probable cause based on Deputy Thompson's uncontradicted testimony that he

smelled an odor of marijuana inside the vehicle, a finding not challenged by Solomon. R&R at 37 (citing cases). Solomon's objection is **OVERRULED**.

## IV.    CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Solomon objects, the Court **OVERRULES** his objections [Doc. 749]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 739] as the Opinion and Order of the Court.

It is hereby **ORDERED** that that Solomon's Motion to Suppress Fruits of Unlawful Stop and Search of the Gold Toyota Camry That the Defendant Was Driving on February 24, 2022 [Doc. 590], Solomon's Motion to Suppress the Search and the Seizure of Items From the Defendant's Vehicle That Were the Result of an Unconstitutional Traffic Stop [Doc. 591], and Solomon's Motion to Suppress the Search and the Seizure of Items From the Defendant's Vehicle Found After the Defendant's Alleged Consent Was Revoked [Doc. 592] are **DENIED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified this case ready for trial on February 7, 2025, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the

Report and Recommendation ruling on his pretrial motions to suppress outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(1)(D).

It is further **ORDERED** that the time between the date the Magistrate Judge certified Solomon ready for trial on February 7, 2025, and the date the final orders on his co-Defendants' pre-trial motions are issued also shall be excludable under 18 U.S.C. § 3161(h)(6).[7]

**IT IS SO ORDERED** this 26th day of March, 2025.

_Mark H. Cohen_
MARK H. COHEN
United States District Judge

---

[7] Co-Defendants Alexavier Negron and Dresden Toron Daniels still have pending Magistrate Judge's Reports and Recommendations to which objections and responses have been or will be filed, and the Speedy Trial clock will not resume for Defendant Solomon and the other Defendants until final orders on those R&Rs have been filed.